270 So.2d 451 (1972)
STATE of Florida, Appellant,
v.
Terry Kerr COLLIER and Maria Isabel Collier, Appellees.
No. 72-394.
District Court of Appeal of Florida, Fourth District.
December 19, 1972.
*452 Rom W. Powell, County Sol., and Warren H. Petersen, Asst. County Sol., Orlando, for appellant.
Michael F. Cycmanick and James M. Russ, of Law Offices of James M. Russ, Orlando, for appellees.
REED, Chief Judge.
The issue on this interlocutory appeal by the state is whether or not the trial court correctly suppressed evidence seized by officers of the Winter Park Police Department in the execution of a search warrant, on the ground that the execution of the warrant was not in compliance with the requirements imposed by F.S. Section 933.09, F.S.A. 1971.
On 8 May 1970 a search warrant was issued to the Chief and officers of the Winter Park Police Department authorizing a search of a garage apartment occupied by the appellees, Terry Collier and Maria Collier, for barbiturate drugs. The warrant was executed by officers of the Winter Park Police Department on the same date or in the early hours of 9 May 1970. As a result of the search the appellees were apparently found to be in possession of cannabis (commonly known as marijuana) and an information was filed in the present case charging them with unlawful possession of the aforementioned narcotic. On 14 February 1972 the appellees filed a motion to suppress the evidence seized under *453 the warrant.[*] Following an evidentiary hearing the trial court entered the order granting the motion to suppress, and this appeal followed.
The facts surrounding the execution of the search warrant were related at the hearing on the motion to suppress by one Betty McDonnell who appeared as a witness for the appellees and William J. Hill, a police officer with the Winter Park Police Department. From the testimony of these witnesses it appears that on 7 May 1970, Officer Hill arranged with the Colliers to come to their apartment the following evening to purchase narcotics. Officer Hill then obtained the search warrant. On the evening of 8 May 1970 he joined the Colliers and several other persons at the Colliers' garage apartment in Winter Park. Officer Hill testified that the gathering appeared to be a pot party. Officer Hill, whose identity as a policeman was then unknown to the Colliers, mingled with those present for approximately thirty minutes. He then left the garage apartment by the only doorway which led by way of an exterior stairway to the ground level.
After Officer Hill left the apartment he was joined by two other officers from the Winter Park Police Department who had been waiting in the vicinity. The three officers then returned to the apartment and, according to Officer Hill, identified themselves at the door as police officers and upon entry announced that they had a search warrant. McDonnell's version of the events surrounding the entry of the officers varies only in that she did not recall the announcement of the search warrant when the officers entered. She verified, however, that the officers announced themselves as Winter Park police at the door which was open or partially open when the officers arrived at the entrance. McDonnell testified that there was no knocking or other request for permission to enter before the officers entered the premises.
The controlling statute is F.S. Section 933.09, F.S.A. 1971. It provides:
"Officer may break open door, etc., to execute warrant.  The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of his authority and purpose he is refused admittance to said house or access to anything therein."
This statute by its express language and by the reasonable implication thereof requires a police officer engaged in the execution of a search warrant before entering one's residence to attempt to call to the attention of those within the residence the presence of the officer outside the dwelling by knocking or any other reasonable means and thereafter to announce his authority (i.e., officer of the Winter Park Police Department) and the purpose of his presence at the residence (i.e., to execute a search warrant). See Benefield v. State, Fla. 1964, 160 So.2d 706, where the Florida Supreme Court construed F.S. Section 901.19(1), F.S.A. 1969, which is closely *454 analogous to F.S. Section 933.09, F.S.A. 1971, the statute now before this court. The only significant difference between the two statutes is that the former governs official entries for the purpose of effecting an arrest while the latter governs official entries for the purpose of executing a search warrant. Benefield v. State, supra, is, therefore, persuasive authority for the construction of F.S. Section 933.09, F.S.A. 1971.
In the present case, the evidence clearly revealed that the officers did not comply with the controlling statute in that before entry they did neither knock nor otherwise announce their presence to the Colliers within nor did they announce their purpose. As a result of the failure of the officers to comply with the statute, the evidence seized under the warrant was seized illegally, was not admissible in evidence, and was, therefore, subject to suppression. Benefield v. State, supra; McLendon v. State, Fla.App. 1965, 176 So.2d 568, and Weiner v. Kelly, Fla. 1955, 82 So.2d 155 (dictum).
The state contends that the statute need not be followed where persons within the residence are already aware of the authority and purpose of the officers or where compliance would afford an opportunity to those within the premises to destroy the incriminating items sought by the investigating officers. With regard to the first exception relied on by the state, we simply note that there was no evidence to indicate that the Colliers, the appellees here, were aware of the authority and purpose of the officers prior to their entry. With regard to the second exception relied on by the state, we agree that non-compliance with the statute may not necessarily result in the exclusion of the seized evidence where the officers involved have a reasonable ground to believe compliance with the statute would result in destruction of the evidence before the search and seizure could be effected. See Benefield v. State, supra. Where, however, non-compliance is shown and the state wishes to justify the same on the basis of such exception, it is incumbent upon the state to produce evidence to support same. See Earman v. State, Florida Supreme Court, 265 So.2d 695, opinion filed August 2, 1972.
In the present case the state did not present evidence to show that the investigating officers were in fact concerned or had reasonable grounds to be concerned about the destruction of evidence. The state did not even produce evidence at the suppression hearing as to the disposable nature of the items expected to be revealed by the search, even though Officer Hill has been in the premises prior to the time the search was conducted. Officer Hill did testify that when he was in the residence before the search occurred, he observed what he thought was a pot party in progress. This rather vague testimony does not provide a basis for an inference that the officers had a reasonable ground to fear the destruction of evidence. At least it was not such conclusive evidence on this issue that we can hold the trial judge in error for failing to find the existence of such exceptional circumstances that would justify non-compliance with the statute.
At oral argument the state contended that because Officer Hill was invited into the apartment as a social guest, he had the right, after leaving and without further formality, to re-enter the apartment with his fellow officers for purposes of executing the search warrant. This argument really begs the question because it assumes, without demonstrating, that the statute in question has an exception which covers such an entry. The statute does not have such exception and one cannot reasonably be found in the implication of the statute. It seems rather clear that Officer Hill's first entry into the apartment was authorized by the Colliers, but that such authorization did not relieve Officer Hill from the burdens of the statute after he left and *455 returned not in the capacity of a social guest, but in his official capacity for the purpose of executing a search warrant.
Affirmed.
WALDEN and CROSS, JJ., concur.
NOTES
[*] The inventory printed on the back of the search warrant indicates the following items were seized in the execution of the warrant:

1. Salt Shaker
2. Partial baggies of Cannabis
1. Small white mortar and pestle containing a white substance
1. Plastic vial partially filled with Cannabis
1. Water Pipe with suspect Cannabis in receptacle
1. Metal smoking pipe
1. Smoking receptacle, stone with suspect hashish
1. Chrome container of smoking papers
3. Metal or stone smoking pipes
1. Envelope of asst. greeting cards all Cannabis oriented
1. Cannabis cigarette
1. Paper Pipe
1. Plastic case containing hashish
2. Vials of Cannabis
1. Plastic bag partially full of Cannabis
2. Packs of smoking papers
1. Leather purse